Receipt number AUSFCC-8691530

## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| **RED ORANGE NORTH AMERICA, INC.** | ) ) ) | |
| **Plaintiff,** | ) ) | **No.:** _23-660 C_ |
| **v.** | ) ) ) | **COMPLAINT** **May 4, 2023** |
| **THE UNITED STATES,** | ) ) ) | |
| **Defendant.** | ) ) | |

## COMPLAINT

Red Orange North America, Inc. ("Red Orange"), through undersigned counsel, submits this Complaint against Defendant, United States Marine Corps (the "Marine Corps" or "Government"), for terminating Red Orange's Contract No. M0026322P0004 (the "Contract") for default pursuant to FAR 52.212-4(m) and hereby respectfully requests that it be converted to a termination for the Government's convenience pursuant to FAR 52.212-4(l), showing the following:

### THE PARTIES

1.     Plaintiff Red Orange is a Pennsylvania corporation with a principal place of business located at 500 Office Center Drive, Suite 400, Fort Washington, PA 19034, which address is also its registered office in Pennsylvania. Red Orange provides global government contracting services for federal government agencies in the United States, the United Kingdom and the European Union.

2.      Defendant United States Marine Corps is the maritime land force service branch of the United States Armed Forces.   The Contracting Officer responsible for administering Red Orange's Contract is Rodney Small (the "Contracting Officer").

### JURISDICTION, VENUE, AND STANDING

3.      The contract dispute underlying this action is subject to the Contract Disputes Act, 41 U.S.C. § 7101, *et seq*.

4.      For purposes of jurisdiction, "[a] government decision to terminate a contractor for default is a government claim" under the CDA. *Malone v. U.S.*, 849 F.2d 1441, 1443 (Fed. Cir. 1988), *modified,* 857 F.2d 787 (Fed. Cir. 1988) (citing *Z.A.N. Co. v. United States*, 6 Cl. Ct. 298, 305–06 (1984)) (holding that default termination is government claim); *James Reedom, d/b/a J & M Electronic*, 1985 WL 16514 (A.S.B.C.A. Jan. 22, 1985) (explaining that contracting officer decision to terminate contract for default was government claim within meaning of CDA).

5.      Accordingly, this Court has jurisdiction over this action pursuant to 28 U.S.C. § 1491 (the "Tucker Act"), 41 U.S.C. § 609(a)(1), and FAR 33.211(a)(v)(2).

6.      Venue is appropriate in this Court pursuant to 28 U.S.C. § 1491(b).

7.      Standing arises under FAR 52.212-4 (commercial contract terms and termination for convenience), 48 C.F.R. 12.403 (termination), 41 U.S.C. chapter 71 and FAR 52.233-1 (Contract Disputes), which are the foundation for Red Orange's claims.

8.      Red Orange was in privity with the Government under the subject Contract and therefore has standing to bring this action. *Ransom v. United States*, 900 F.2d 242, 244 (Fed. Cir. 1990) ("To maintain a cause of action pursuant to the Tucker Act that is based on a contract, the contract must be between the plaintiff and the government and entitle the plaintiff to money damages in the event of the government's breach of that contract.").

9.     Pursuant to 41 U.S.C. § 1491(b)(2), this Court may award any relief it considers proper, including declaratory and injunctive relief, and monetary relief, including but not limited to legal fees and expenses incidental to the declaratory and injunctive relief sought.

## TIMELINESS

10.     The Government's May 4, 2022 termination of Red Orange's contract for default constitutes a claim for jurisdictional purposes. On May 9, 2022, Red Orange requested that the Contracting Officer convert its termination for default to termination for convenience. On October 25, 2022, the Contracting Officer issued a final decision denying Red Orange's request to reconsider termination for default, vesting the Court with jurisdiction over this timely-filed appeal under 41 U.S.C. § 7105(e)(1)(A).

11.     Red Orange timely files this Complaint no later than 12 months after receiving the Contracting Officer's May 4, 2022 Notice of Termination pursuant to FAR 33.211(a)(v)(2) and the Contracting Officer's October 25, 2022 final decision denying Red Orange's request to reconsider.

## STATEMENT OF FACTS

### A.     The COVID-19 Pandemic and Termination of Red Orange's Contract

12.     On December 13, 2021, Red Orange entered into Contract No. M0026322P0004 with the Government to supply jump protection hardware, such as galvanized angle irons, flux core welding wire, welding wire, hex nuts, cap screws, and other commercial items (the "Items"). A copy of the December 13, 2021 Contract No. M0026322P0004 between Red Orange and the Marine Corps is attached as **Exhibit A.**

13.     Due to raw material shortages and global supply chain issues caused by the COVID-19 pandemic and beyond Red Orange's control, Red Orange's ability to timely deliver the Items to the Government was negatively impacted.

14.     These well-documented and widely known material shortages and supply chain issues affected every industry in the world. Many of these issues persist to this day.

15.     Red Orange consistently communicated any issues or concerns about its ability to timely deliver the Items to the Contracting Officer.

16.     On January 25, 2022, Red Orange informed the Contracting Officer that all Items except items under CLINs 0001 and 0002 were ready for delivery and asked if partial delivery would be acceptable. *See* email correspondence from December 2021 to March 2022, attached as **Exhibit B.**

17.     The Contracting Officer responded on the same day that Red Orange "can ship items as they become available" and provided the shipping address. *Id.*

18.     The Contracting Officer reiterated that it would be acceptable for Red Orange to deliver the completed CLINs by the contractual February 11, 2022 deadline and complete delivery for CLINs 0001 and 0002 as they become available:

> As I mentioned in this morning's email, go ahead and ship the CLINS you are ready to ship. Delivery date for all of the CLINS on the contract is 11 February 2022.
>
> Please let me know which CLINS you are shipping now an estimated date of arrival and when the last two CLINS are due to ship and arrive.

*Id.*

19.     On February 8, 2022, Red Orange advised that it expected to deliver the remaining items during the second week of April 2022. *Id.*

20.     Thereafter, Red Orange used its best efforts to facilitate delivery of the goods but was prevented from doing so by the same supply chain and sourcing problems.  Red Orange continued to communicate with the Contracting Officer and apprise the Government of the issues that were beyond its control.

21.     On May 2, 2022, the Contracting Officer sent Red Orange an email with an attached Show Cause Notice (the "Show Cause Notice") for Red Orange's failure to "delivery [sic] Items 0001 and 0002 by the required contract delivery date." A copy of Contracting Officer's May 2, 2022 email, the Show Cause Notice attachment, and Red Orange's response to the Show Cause Notice (collectively, the "Show Cause Correspondence") are attached hereto as **Exhibit C.**

22.     In his Show Cause Notice to Red Orange, the Contracting Officer stated the following:

> Since you have failed to delivery all items under this contract, the Government is considering terminating the contract under the provisions for "Cause" (see FAR 12.403 and 52.212-4). Pending a final decision in the matter, **it will be necessary to determine whether your failure to perform arose from causes beyond your control and without fault or negligence on your part.** Accordingly, you are given the opportunity to present, in writing, any facts bearing on the question to the Contracting Officer, Mr. Rodney Small, within 5 days after receipt of this notice. Your failure to present any excuses within this time may be considered as an admission that none exist. Your attention is invited to the respective rights of the Contractor and the Government and the liabilities that may be invoked if a decision is made to terminate for cause.

*Id*.

23.     Red Orange confirmed receipt of the May 2, 2022 email and Show Cause Notice on May 3, 2022. *Id.*

24.     On May 4, 2022, Red Orange timely and properly responded to the Show Cause

Notice, explaining how its failure to timely perform under the Contract arose from causes beyond

its control and requesting an extension until June 2022:

> We have delivered all items except the CLIN001 and CLIN002. As per original plan, the CLIN001 was to be imported into USA as there was no stock in USA and hence, we requested more time as it had to be imported from outside the country. The original plan on CLIN002 was to purchase from USA but as soon as the contract came in and we went for purchase we were informed there is not enough stock and this item had to be imported as well, which as per our vendors ,would take around 16-18 weeks. The lead time was not acceptable, we tried to source from multiple vendors in USA, but we couldn't secure stock.
>
> We finally found that the item is manufactured at the same origin as CLIN001 and with an intension of reducing the lead time, we decided to import CLIN002 along with CLIN001. Again, our intension was only to reduce the lead time and complete the project.
>
> The manufacturers went on Christmas and New year and once they came back, they faced multiple delays in securing raw materials due to global raw material shortage. We were promised of Feb end delivery, and we estimated the products to be in USA by April end. Come another hurdle in shipping. The items that were intended to be shipped via LCL, due to Global shipping restrictions and disruption in chain, the LCL shipments were stopped, and we were asked to look for full container shipping. As you may be aware, the freight costs increased rapidly due to pandemic and Global shipping challenges.
>
> As I informed Mr. Randy from last week, the goods are ready at the origin, and we are trying our best to secure a booking. There is serious disruption and container clog at the ports, it's an unforeseen delay that is beyond our control, but we are trying our best.
>
> We humbly request you to take into consideration all the hurdles that came our way, while our intension was purely to support the mission and honour the contract. To be honest, the current shipping rates are around $7500 above our budget value, but our management has approved to absorb the charge, with a sole intention of honouring the contract.
> I hope for your understanding and humbly request you a chance to grant us extension until June. The materials are all paid for in full.

*Id.*

25.     The Contracting Officer acknowledged receipt of Red Orange's response on May 4, 2022. *Id.*

26.     On May 7, 2022, the Contracting Officer sent Red Orange an email with an attached Notice of Termination dated May 4, 2022. A copy of the Contracting Officer's email chain with Red Orange from on May 7, 2022 through October 25, 2022 (the "Termination Email Chain") and the May 4, 202 Notice of Termination (the "Termination Notice") are attached as **Exhibits D** and **E**, respectively.

27.     The Termination Notice stated that the Contracting Officer was terminating Red Orange's Contract for default for failure to timely deliver the items specified in Contract Line Item Numbers ("CLINs") 0001 and 0002 by the February 11, 2022 deadline:

> 2. Subject fixed price contract was awarded to you on 13 December 2021, and it required you to deliver to the Government Items 0001 and 0002. The contract delivery schedule required delivery of these items on or before 11 February 2022.
>
> 3. After due consideration of all of the pertinent facts, the undersigned Contracting Officer hereby finds and determines that you have failed to complete the requirements of subject contract within the time required by the terms thereof and that there are no adequate assurances of future performance (delivery of CLINS 0001 and 0002). Therefore, you are hereby notified that the Government, by this written notice, terminates subject contract CLINS 0001 and 0002, including your right to proceed with performance thereunder, in its entirety for cause in accordance with Federal Acquisition Regulation 52.212-4(m) effective upon receipt of this notice.

Termination Notice, Ex. E.

28.     In its May 9, 2022 email to the Contracting Officer, Red Orange appealed the termination for default to the Contracting Officer, requesting that it be converted to a termination for convenience under FAR 52.211-4(m). *See* Termination Email Chain, Ex. D.

29.     In support of its request, Red Orange explained that the shipping delays were due to no fault of its own and that it had no control over the forces impacting the global supply chain: "The manufacturers do not get raw materials on time, ports are congested, the containers don't return on time, and the shipping liners keep increasing the costs day by day." *Id.*

30.     Red Orange stated that the Product has already been manufactured, paid for in full, and was ready to be shipped. The sole obstacle preventing timely delivery was transporting the product from manufacturer to the Government by the subject deadline. *Id.*

31.     Red Orange further explained that it explored all possible solutions within its power to remedy the situation, including buying the Product locally and importing raw materials for domestic production. *Id.*

32.     As stated in its response to the Show Cause Notice, Red Orange anticipated completing delivery in June 2022. *See* Show Cause Correspondence, Ex. C.

33.     On August 29, 2022, the Contracting Officer advised that Red Orange's request for reconsideration was being reviewed. *See* Termination Email Chain, Ex. D.

34.     Red Orange followed up on September 28, 2022, and then again on October 5, 2022. *Id.*

35.     On October 5, 2022, the Contracting Officer stated that he needed "a few more days to consider [Red Orange's] request." *Id.*

36.     Red Orange reached out again on October 14, 2022, stating:

> [W]e have been loosing [sic] contracts since some of our customers look at this contract on FAPIIS and judge us as non performing company while in reality, we have over the 15 years executed so many contracts without a black mark. Kindly help us on our request to remove the termination. Kindly also consider that on your order we delivered everything except the 2 lines which were manufacturers delay, due to non availability of raw materials, which time was a global supply chain issue, due to pandemic.

*Id.*

37.     On October 25, 2022, the Contracting Officer rejected Red Orange's request to convert its termination for default to a termination for convenience, stating that Red Orange's "claim of manufacturing delays due to non-availability of raw materials was not substantiated" and that the Government was able to procure the Items from different sources "15 days after contract award":

> The Termination for Cause is appropriate due to your company's failure to deliver the handy panels and angle iron in a timely manner. Your claim of manufacturing delays due to non-availability of raw materials was not substantiated. Additionally, you did not provide proof of your claim of your attempts to secure these items from different sources. As I previously mentioned, we were able to procure the handy panels and angle irons on two separate contracts (M0026322P0021 & M0026322P0050). In both instances, the items were delivered within 15 days after contract award, which supports our position of an inexcusable delay.

*Id.*

38.     Notably, the Contracting Officer does not state when the two substitute contracts were awarded and fulfilled.

39.     Because the Contracting Officer made this statement in October 2022, approximately nine months after Red Orange's February 2022 contractual deadline, it is unclear whether the Government obtained better value or faster delivery of the Items than it would have from Red Orange

40.     Upon information and belief, in spite of the Government's apparent urgency to reprocure the Items, Red Orange has reason to believe that the Government did not issue the solicitation for at least one of these two reprocured contracts until August 25, 2022, with a delivery date of September 7, 2022.

41.     Red Orange, on the other hand, expected to complete its delivery of all remaining Items in June 2022..

**B.      *The Contracting Officer Breached the Termination Provisions under FAR 52.212-4.***

42.     The parties' contract incorporates by reference the provisions of FAR 52.212–4, Contract Terms and Conditions—Commercial Products and Commercial Services. *See* Contract, Ex. A.

43.     Under FAR 52.212-4(l) & (m), the Government has the right to terminate Red Orange's Contract for the convenience of the Government or for cause.

44.     FAR 52.212-4(l) below permits the Contracting Officer to terminate a contract for commercial items for the Government's sole convenience and pay the contractor for percentage of work performed prior to notice of termination:

> *FAR 52.212–4(l) Termination for the Government's convenience.*
> The Government reserves the right to terminate this contract, or any part hereof, for its sole convenience. In the event of such termination, the Contractor shall immediately stop all work hereunder and shall immediately cause any and all of its suppliers and subcontractors to cease work. Subject to the terms of this contract, the Contractor shall be paid an amount for direct labor hours (as defined in the Schedule of the contract)[.]

FAR 52.212-4(l).

45.     Under subsection FAR 52.212-4(m), on the other hand, the Government may terminate for cause upon the contractor's inexcusable default or failure "to comply with any contract terms and conditions, or fails to provide the Government, upon request, with adequate assurances of future performance":

> *FAR 52.212-4(m) Termination for cause.*
> The Government may terminate this contract, or any part hereof, for cause in the event of **any default by the Contractor, or if the Contractor fails to comply with any contract terms and**

**conditions, or fails to provide the Government, upon request, with adequate assurances of future performance**. In the event of termination for cause, the Government shall not be liable to the Contractor for any amount for supplies or services not accepted, and the Contractor shall be liable to the Government for any and all rights and remedies provided by law. **If it is determined that the Government improperly terminated this contract for default, such termination shall be deemed a termination for convenience.**

*Id.* at 52.212-4(m) (emphasis added).

46.     However, the Excusable Delay provision in subsection FAR 52.212-4(f) states that a contractor shall not be liable for default if the "nonperformance is caused by an occurrence beyond the reasonable control of the Contractor and without its fault or negligence":

> *FAR 52.212–4(f) Excusable delays.*
> The Contractor shall be **liable for default <u>unless</u> nonperformance is caused by an occurrence beyond the reasonable control of the Contractor and without its fault or negligence such as,** acts of God or the public enemy, acts of the Government in either its sovereign or contractual capacity, fires, floods, **epidemics, quarantine restrictions**, strikes, unusually severe weather, **and delays of common carriers**. The Contractor shall **notify the Contracting Officer in writing as soon as it is reasonably possible after the commencement of any excusable delay**, setting forth the full particulars in connection therewith, **shall remedy such occurrence with all reasonable dispatch,** and shall promptly give written notice to the Contracting Officer of the cessation of such occurrence.

*Id.* at 52.212-4(f) (emphasis added).

47.     "The government bears the burden of showing that a termination for default was justified." *Universal Shelters of America, Inc. v. U.S.*, 87 Fed. Cl. 127, 144 (Fed. Cl. 2009) (citing *Lisbon Contractors v. United States*, 828 F.2d 759, 765 (Fed. Cir. 1987)).

48.     Although "[t]he decision to terminate a contract for default lies within the discretion of the contracting officer[,]" such discretion "must be fair and reasonable, not arbitrary or

capricious." *Id.* (citing *T & M Distrib. v. United States,* 185 F.3d 1279, 1283 (Fed. Cir. 1999) and *Darwin Constr. Co. v. United States,* 811 F.2d 593, 597 (Fed. Cir. 1987)).

49.     Further, the Contracting Officer must ensure that the decision to terminate "satisfies the Government's 'best interests.'" *Id.* (citing 48 C.F.R. § 12.403(b) and *Nuclear Rsrch. Corp. v. United States*, 814 F.2d 647, 649 (Fed. Cir. 1987)).

50.     "Once the government shows that the termination for cause was justified, the burden shifts to the contractor 'to demonstrate that the default was excusable' by showing that "the causes of the default were beyond its control and not due to its fault or negligence." *Id.*

51.     Red Orange's termination for default was improper because (1) its default constitutes excusable delay, and (2) the Contracting Officer's decision was arbitrary and capricious because it was not in the best interests of the Government.

52.     Red Orange's performance delays due to the COVID-19 pandemic's effects on the global supply chain constitute excusable delays FAR 52.212-4(f), including but not limited to "acts of God," "epidemics," "quarantine restrictions," and "delays of common carriers." *Id.*

53.     Red Orange satisfied its obligations by timely responding to the Contracting Officer's May 2, 2022 Cure Notice with a detailed explanation of how its failure to timely deliver the Items is outside its control and provided adequate assurances of future performance. *See Universal Shelters*, 87 Fed. Cl. at 144 ("Upon receiving a cure notice, a contractor wishing to avoid default must provide adequate assurances to the Government that it can complete the contract requirements in a timely manner.") (citations omitted).

54.     Red Orange explained that the Product has already been manufactured but could not be timely delivered due to global supply chain issues, but assured the Government of its ability to fully perform in the future. *See* Show Cause Correspondence, Ex. C.

55.     Here, although Red Orange's delay constitutes prima facie default, its delay is excusable and therefore does not constitute default under the Contract. *Am. Med. Equip., Inc. v. U.S.*, 160 Fed. Cl. 344, 354 (Fed. Cl. 2022) ("For contracts concerning delivery of goods, a contractor's failure to make timely delivery of agreed-upon goods establishes a prima facie [sic] case of default.").

56.     Because Red Orange's delay does not constitute default, the Contracting Officer's delays were excusable and it provided adequate assurances, termination for default was contrary to the language in FAR 52.212-4(f), (l), and (m), and the Contracting Officer should have terminated the contract for convenience instead.

57.     The cause for Red Orange's delay, the fallout from the COVID-19 pandemic, qualifies as a force majeure event under applicable definitions including "epidemics," "quarantine restrictions," and "delays of common carriers" that are clearly not due to Red Orange's "negligence" and outside of Red Orange's "reasonable control." FAR 52.212-4(f).

58.     Red Orange kept the Government apprised of the situation and advised that the Product has already been manufactured but that it is at the mercy of the issues plaguing the shipping industry and will deliver the Product as soon as possible.

59.     Red Orange provided ample explanations for its delays and timely responded to its request for adequate assurances of future performance under FAR 52.212-4(m).

60.     Further, upon information and belief, the termination was not in the government's best interests because reprocuring the items under CLINs  0001 and 0002 resulted, at least in part, in a later delivery than if it would have been fulfilled by Red Orange.

61.     Red Orange's delays are excusable under FAR 52.212-4(f) and the Contracting Officer's termination was not in the best interests of the Government.

62.     Therefore, termination for default was arbitrary, capricious, lacked a rational basis, and therefore should be converted to a termination for convenience.

63.     This Court must set aside any agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); 28 U.S.C. § 1491(b)(4).

64.     The last sentence of FAR 52.212-4(m) specifically contemplates circumstances where an improper termination for cause may be converted to a termination for the Government's convenience: "If it is determined that the Government improperly terminated this contract for default, such termination shall be deemed a termination for convenience." *Id.*

65.     Red Orange hereby appeals the final decision to terminate the Contract for default as baseless and requests that the Court convert it to a termination for convenience pursuant to FAR 52.212-4(m).

### C.     *Red Orange's Lost Contracting Opportunities Due to the Government's Breach.*

66.     A termination for cause results in a negative evaluation of Red Orange's contractual performance in the Federal Awardee Performance and Integrity Information System ("FAPIIS"), which shows Red Orange as non-performing under the subject Contract.

67.     Past performance reflected in FAPIIS is one of the factors that the Government uses to evaluate prospective contractors in a competitive procurement.

68.     Negative past performance can result in a finding that the prospective contractor is not responsible, resulting in the contract being awarded to the next best candidate.

69.     Red Orange's negative FAPIIS review due to the Government's termination for cause directly impacted Red Orange's ability to compete for future government contracts.

70.     Red Orange is aware of at least three different contracts that it would have won but-for the negative FAPIIS evaluation.

71.     The Contracting Officers involved in all three procurements below expressly informed Red Orange that it although it was the lowest responsive bidder on the following three contracts, they were awarded to the next lowest bidder due to Red Orange's FAPIIS record:

      i.     U.S. Customs and Border Protection (CBP) - PPE Apparel Rental
            Solicitation No. 70B03C22Q00000298A
            Awardee: Model Laundry, LLC
            Total Award Amount: $438,215.52
            Notification to Unsuccessful Offeror: September 27, 2022

     ii.     U.S. Navy - COVID Testing Kits and Supplies in Laos
            RFQ No. N40345-22-Q-0095
            Awardee: Trace Private Limited
            Total Award Amount:  $563,796.14
            Notification to Unsuccessful Offeror: September 30, 2022

    iii.     USAF Spangdahlem - MXG Food Trailer
            Solicitation No. FA560622Q2034
            Awardee: Arpa Incorporated company
            Total Award Amount: $38,552.00
            Notification to Unsuccessful Offeror: October 4, 2022

72.     First, on September 27, 2022, Red Orange discovered that it lost its bid on the U.S. Customs and Border Patrol ("CBP") solicitation for PPE Apparel Rental, Solicitation No. 70B03C22Q00000298A. A copy of the September 27, 2022 Notification to Unsuccessful Offeror from CBP (the "CBP Notification") is attached as **Exhibit F.**

73.     The CBP proposals were evaluated on a Lowest Price Technically Acceptable (LPTA) criteria.

74.     As stated in CBP's Notification, Red Orange would have won this contract based on its price and technical proposals, but it was ultimately rejected due to Red Orange's negative past performance history in FAPIIS. *Id.*

75.    Second, Red Orange was notified on September 30, 2022 that it lost the U.S. Navy contract for COVID Testing Kits and Supplies in Laos, RFQ No. N40345-22-Q-0095, to a bidder whose price proposal was approximately $40,000 higher than Red Orange's. *See* September 30, 2022 email chain attached as **Exhibit G.**

76.    Upon inquiring why the higher offer was selected, Red Orange received the following response:

> Unfortunately, the Contracting Officer was unable to determine you to be responsible in accordance with FAR 9.104-1 due to multiple recent terminations for nonperformance. Due to the nature of this requirement, the Contracting Officer determined the importance of receiving these items in a timely manner is vital to the success of this contract.

*Id.*

77.    Third, on October 4, 2022, Red Orange was notified that its bid on the USAF Spangdahlem - MXG Food Trailer, Solicitation No. FA560622Q2034, was unsuccessful. A copy of the October 4, 2022 USAF email chain is attached as **Exhibit H.**

78.    Red Orange similarly inquired why the contract was awarded to a bidder with a higher price proposal. *Id.*

79.    Once again, Red Orange was informed that it lost the contract to the next-ranking offeror due to Red Orange's negative evaluations in FAPIIS:

> FAPIIS records for UEID S8NPX3Q8MQH3 show two Terminations for Cause for which we deemed RedOrange North America Inc. not responsible and subsequently awarded the contract to the next contractor ranking after RedOrange North America Inc. (IAW FAR 12.602(a) and FAR 13.106-2).

*Id.*

80.    Red Orange's FAPIIS record does show another termination for cause that occurred in June 2018, referenced in the emails above.

81.     However, prior to the May 2022, the June 2018 termination by itself typically did not negatively affect Red Orange's chances of winning government contracts.

82.     Most of the time, Red Orange was asked to provide an explanation for the June 2018 termination, which was satisfactory enough so that it did not result in a negative past performance score that caused Red Orange to lose.

83.     For example, on November 12, 2020, a U.S. Army Contracting Specialist sent Red Orange a request for additional agency documentation of the June 2018 termination for cause and an explanation on how Red Orange rectified issues that caused the termination. *See* November 12, 2020 email chain with the U.S. Army Contracting Specialist, attached as **Exhibit I.**

84.     Red Orange explained that this was "a mutually agreed on cancellation of the contract due to our subcontractor, however Ms. Locket the contracting administrator was deployed overseas and the documentation got submitted as cause." *Id.*

85.     Red Orange further stated the following:

> Essentially, our subcontractor Active Deployment Systems was trying to make extra money on a price that was not advantageous to the government, and they were not pleased when they realized that they lost the contract to Red Orange with a lower margin. In conclusion we have tightened our vetting process for our subcontractors and have since had no issues like this occur again.

*Id.*

86.     Although Red Orange has been trying to correct this mistake for years, the Contracting Officer on the subject contract has been deployed overseas and Red Orange has been otherwise unable to have the record of a June 2018 termination for cause corrected. *Id.*

87.     Nonetheless, until recently, Red Orange generally has been able to overcome any obstacles due to the negative June 2018 record with this credible explanation.

88.     Since May 2022, however, because Red Orange now has two terminations for cause in FAPIIS, it is automatically deemed not responsible and loses the competition without being given an opportunity to provide an explanation.

89.     As shown in the Government's proposed modification to the subject Contract following the May 2022 cancellation of CLINs 0001 and 0002, the value of Red Orange's Contract was decreased by $14,474.24. A copy of the proposed Modification M0026322P0004_P0001 to the subject Contract is attached as **Exhibit J.**

## CLAIMS FOR RELIEF

### COUNT I
### DECLARATORY RELIEF

90.     Paragraphs 1 through 89 are incorporated by reference as though alleged fully herein.

91.     The Contracting Officer's decision to terminate Red Orange for default in contravention of FAR 52.212-4(l) & (m) was without legal or factual basis, arbitrary and capricious, and an abuse of discretion.

92.      The Contracting Officer's termination for default is recorded in FAPIIS and incorrectly indicates to other prospective government clients that Red Orange was terminated for non-performance.

93.     Red Orange's negative FAPIIS evaluations as a result of this termination for cause has caused it and continues causing it actual harm, including but not limited to, financial harm due to lost government contracting opportunities and damage to Red Orange's reputation as a contractor who provides competitive, best-value to the Government.

94.     If not declared invalid, the Contracting Officer's improper decision to terminate Red Orange's Contract for convenience will continue causing Red Orange to suffer irreparable

harm, including, but not limited to, depriving Red Orange of other government contracting opportunities and damaging Red Orange's reputation as a contractor who provides competitive, best-value products and services to the Government.

95.     Accordingly, the validity or invalidity of the Contracting Officer's termination decision gives rise to an actual and justiciable controversy between the parties within this Court's jurisdiction.

96.     This Court has authority to declare and determine whether Red Orange's termination for cause was arbitrary, capricious, and without a rational basis.

97.     Accordingly,  Red Orange respectfully requests a judicial declaration that, by terminating Red Orange for cause, the Contracting Officer violated Red Orange's contractual rights, and an order to convert Red Orange's termination for cause to a termination for the Government's convenience.

## COUNT II
## BREACH OF CONTRACT

98.     Paragraphs 1 through 89 are incorporated by reference as though alleged fully herein.

99.     Red Orange entered into a valid, fully enforceable Contract with the Government dated December 13, 2021 to supply Jump Protection Hardware to the Marine Corps.

100.     Both parties were bound by the provisions in FAR 52.212-4, incorporated into the Contract by reference.

101.     FAR 52.212-4(m) permits the Government to terminate the Contract for default, failure to comply with any Contract terms and conditions, or failure to provide the Government, upon request, with adequate assurances of future performance.

102.    However, FAR 52.212-4(f) states Red Orange shall not be liable for default if its nonperformance constitutes excusable delay as defined therein.

103.    Although Red Orange's performance under the Contract was delayed and therefore violated the terms and conditions of the Contract, the delay was caused by occurrences beyond the reasonable control of Red Orange and without its fault or the COVID-19 pandemic, quarantine restrictions, and delays of common carriers.

104.    Red Orange notified the Contracting Officer in writing as soon as reasonably possible after learning about this delay.

105.    Red Orange attempted to remedy the delay with reasonable dispatch and intended to promptly give notice to the Contracting Officer of the cessation of the occurrences causing the delay.

106.    Red Orange gave adequate assurances of future performance upon the Contracting Officer's request as required by FAR 52.212-4(m).

107.    Accordingly, the Government had no right to terminate the Contract for cause and should have instead terminated it for the Government's convenience.

108.    The Government breached the Contract when it improperly terminated for cause.

109.    The Government's breach caused Red Orange to lose government contracting opportunities and incur damages under the subject Contract in the total amount of $14,474.24.

110.    Red Orange satisfied the requirements of 41 U.S.C. § 605(a) and 48 C.F.R. § 52.233–1 by providing a sum certain of its damages, including calculations and supporting documentation attached hereto as exhibits.

111.    Accordingly, Red Orange is entitled to relief in the form of monetary damages and an order to convert Red Orange's termination for cause to a termination for convenience.

<u>**COUNT III**</u>
**BREACH OF IMPLIED DUTY OF GOOD FAITH AND FAIR DEALING**

112.   Paragraphs 1 through 89 are incorporated by reference as though alleged fully herein.

113.   The Government owed to Red Orange an implied duty of good faith and fair dealing, which includes a duty to cooperate in Red Orange's performance and an affirmative obligation on the Government "to do what is reasonably necessary to enable [Red Orange] to perform." *In Re Adv. Engr. & Plan. Corp., Inc.*, ASBCA No. 53366, 05-1 B.C.A. (CCH) ¶ 32935 at 163, 128-29 (A.S.B.C.A. Apr. 14, 2005).

114.   The Government's adherence to the terms of FAR 52.212-4 was necessary for Red Orange to perform its obligations under the Contract.

115.   The Government unreasonably withheld assistance when it terminated Red Orange for cause in spite of Red Orange providing (1) adequate notice of anticipated excusable delay; (2) information showing that the delay was outside of its control and not due to its own negligence; and (3) adequate assurance of performance, as required by FAR 52.212-4(f) & (m).

116.   The Government further violated its implied duty of good faith and fair dealing when it improperly terminated the Contract for cause when it only had right to terminate for convenience.

117.   The Government's breach caused Red Orange to lose government contracting opportunities and incur damages under the subject Contract in the total amount of $14,474.24.

118.   Red Orange satisfied the requirements of 41 U.S.C. § 605(a) and 48 C.F.R. § 52.233–1 by providing a sum certain of its damages, including calculations and supporting documentation attached hereto as exhibits.

119.    Accordingly, Red Orange is entitled to relief in the form of monetary damages and an order to convert Red Orange's termination for cause to a termination for convenience.

## COUNT IV
## WAIVER

120.    Paragraphs 1 through 89 are incorporated by reference as though alleged fully herein.

121.    The Government had no right to terminate the Contract for cause because it waived Red Orange's contractual obligation to deliver the Items under CLINs 0001 and 0002 by the February 11, 2022 deadline in the following email from the Contracting Officer:

> As I mentioned in this morning's email, go ahead and ship the CLINS you are ready to ship. Delivery date for all of the CLINS on the contract is 11 February 2022.
>
> Please let me know which CLINS you are shipping now an estimated date of arrival and when the last two CLINS are due to ship and arrive.

*See* Contracting Officer's Jan. 25, 2022 email, Ex. B.

122.    Accordingly, even if Red Orange's delay is not excusable under FAR 52.212-4(f), its failure to timely deliver CLINs 0001 and 0002 does not constitute default because the Government waived the requirement to do so by the February 11, 2022 date.

## REQUEST FOR RELIEF

WHEREFORE, Red Orange respectfully requests that the Court:

A.    Find in favor of Red Orange on Count I: Declaratory Relief, and declare that the Government's decision to terminate the Contract with Red Orange for cause was unreasonable, arbitrary and capricious, and an abuse of discretion;

B.      Find in favor of Red Orange on Count II: Breach of Contract, and order, adjudge, and decree that the Government breached the provisions in FAR 52.212-4 when it terminated Red Orange's Contract for cause and not for convenience;

C.      Find in favor of Red Orange on Count III: Breach of Duty of Good Faith and Fair Dealing, and order, adjudge, and decree that the Government breached the Contract with Red Orange, entitling Red Orange to damages in the total amount of and incur damages under the subject Contract in the total amount of $14,474.24;

D.      Find in favor of Red Orange on Count IV: Waiver and order, adjudge, and decree that the Government waived Red Orange's contractual requirement to deliver the Items to the Government by February 11, 2022;

E.      Find in favor of Red Orange on Counts I, II, III, and IV of the Complaint and order, adjudge, and decree that the Government convert Red Orange's termination for cause under FAR 52.212-4(m) to a termination for the Government's convenience under FAR 52.212-4(l);

F.      Find in favor of Red Orange on Counts I, II, III, and IV of the Complaint and order, adjudge, and decree that Red Orange is entitled to a judgment in the total amount of $14,474.24; and

G.      Grant such other and further relief as the Court may deem just and proper under the circumstances.

Respectfully submitted this 4th day of May, 2023.

BAKER DONELSON BEARMAN
CALDWELL & BERKOWITZ, P.C.

*/s/ Darwin A. Hindman III*
Darwin A. Hindman, III
District of Columbia Bar No. 1034270
901 K Street NW, Suite 900

Washington, D.C. 20001
Telephone: 615-726-7381
Facsimile: 615-744-7381
dhindman@bakerdonelson.com

*Counsel for Plaintiff Red Orange North*
*America, Inc.*